## Insurance Company *versus* O'Maley *et ux.*

1. One of the conditions of a policy of fire insurance was, "the insurance by this policy shall cease at and from the time that the property hereby insured shall be levied on or taken into possession or custody under any proceeding in law or equity." A mechanic's lien was filed against the building insured, judgment obtained thereon, a levari facias issued and was placed in the hands of the sheriff and the property advertised to be sold, when just before the day fixed for the sale the building was destroyed by fire. *Held,* that this levy did not terminate the risk and that the insurers were liable.

2. This condition (as declared by the lower and affirmed by this court) has

special if not exclusive reference to personal property, which when levied on is usually seized *in fact*, and remains until sold in the possession of the sheriff, who cannot be expected to guard it with the same degree of care that the owner would, and it was this actual seizure that necessarily increases the risk which the condition was designed to guard against, and not a technical seizure unattended by change of possession or increased risk.

3. The phrase "levied on," as employed in the policy, does not mean a technical levy, unaccompanied by actual seizure and change of possession, and has no application, ordinarily, to proceedings by levari facias for the sale of real estate.

October 11th 1876.　Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.　WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1876, No. 36.

This was an action of covenant, brought by John O'Maley and wife, to the use of Mellon Brothers, against the Manufacturers' and Merchants' Insurance Company, on a policy of fire insurance.

The defendants pleaded covenants performed absque hoc, with leave, &c.

The facts of the case are sufficiently set forth in the following opinion of Sterrett, P. J. :—

"The company defendant took a risk of $1000, for one year from the 4th of April 1874, on the house of Mrs. O'Maley, and issued their policy therefor in her name.

"On the first day of December 1874, the building was destroyed by fire, of which the company had notice, but they refused to make good the loss, and suit was brought, in the right of Mrs. O'Maley, to recover the insurance money.　The only defence presented by the defendant's affidavit and urged on the trial was, that, after the policy was issued, a mechanic's lien was filed against the building for $21.68, judgment obtained thereon, levari facias issued and placed in the hands of the sheriff, and, before the fire occurred, the property was advertised to be sold on the 7th day of December 1874; that according to one of the conditions of the policy the insurance ceased at and from the time the levari facias was issued, and therefore the company was not liable.

"The condition referred to is as follows, viz.': 'XI. The insurance by this policy shall cease at and from the time that the property hereby insured shall be levied on, or taken into possession or custody under any proceeding in law or equity.'

"It was admitted that the company had received the premium, and it was not pretended that there was any want of good faith on the part of the insured, or that the terms and conditions of the policy had been violated in any manner, except in the particular above stated.　It was a *bald legal* defence, grounded on the *letter* of the condition in the policy, in connection with the fact that a levari facias had been issued and the property advertised for sale.

1 NORRIS—26

[Insurance Co. *v.* O'Maley *et ux.*]

" We were satisfied at the time of the trial that the construction of the policy contended for by the learned counsel for the company was erroneous, and would work great injustice, but he expressed such confidence in his position that we concluded to reserve the question and instruct the jury, pro forma, that the proceedings under the mechanics' lien did not constitute a valid defence, and a verdict was rendered in favor of the plaintiff for the amount of her claim, subject to the opinion of the court in banc on the question of law reserved, viz. : ' Whether, under the 11th condition of the policy, the insurance ceased and the liability of the company was ended before the loss occurred, by reason of the proceedings had on the mechanics' lien.'

" The plaintiffs sought to raise other questions, but they were considered immaterial ; and their right hinges entirely on the construction to be given to the condition just quoted. If the defendant's construction be correct, judgment must be entered for the company, notwithstanding the verdict ; otherwise, the plaintiff is entitled to judgment for the amount found by the jury.

" While the general law of insurance provides necessary safeguards for the protection of underwriters against fraud and imposition on the part of the insured, it is undoubtedly competent and proper for them to incorporate in their contracts of insurance special terms and conditions calculated to secure the most ample protection against fraud and dishonesty ; and all such terms and conditions, designed to guard against increase of risk and every species of fraud to which the insurer may be subjected, should be fairly construed with reference to the object sought to be attained. Beyond this harsh or sharp conditions should not be favored. ' Sometimes policies are seen,' in the language of the learned judge who delivered the opinion of the court in West Branch Ins. Co. *v.* Helfinstein, 4 Wright 300, ' bristling all over with sharp conditions,' on which those who have been so unfortunate as to have their property destroyed by fire may be impaled at the pleasure of the underwriter. Such one-sided policies are not to be commended. They may be used as a snare for the unwary, and are not calculated to accomplish any practical good. Fortunately, they are of very rare occurrence. The policy before us is not one of this class ; but to give it the construction contended for would be a decided step in that direction, and in our judgment would work great injustice.

" The company received the ordinary premium for the risk assumed. The building was occupied by the insured and her family all the time, without any interference with her possession by the sheriff or any one else. No lack of good faith is, in any manner, imputed to her, and nothing whatever was done to increase the risk. Why then should the company, with the plaintiff's money in their treasury, be absolved from their obligation to make good

[Insurance Co. *v.* O'Maley *et ux.*]

the loss? We are answered, simply because an execution on the mechanics' lien was issued, and the sheriff advertised the property for sale.

" Such a construction, having no practical bearing on or connection with the risk, surely could not have been intended, and should not be given unless there is no escape from it. If the condition is construed as having in view a loss attended with an actual seizure and interference with the possession of the insured, whereby the risk might be increased, we can at once recognise its wisdom and propriety ; and doubtless it was this that was intended, and nothing more.

" The condition in question has *special* if not *exclusive* reference to personal property, which when levied on is usually seized *in fact* and remains in the custody and possession of the sheriff until it is sold. This works an involuntary change of possession—takes the property out of the owner's control and leaves it in charge of the sheriff and his employees, who cannot be expected to guard it with the same degree of care that the owner would. Hence a levy and *actual* seizure necessarily increases the risk, and it is this that the condition is designed to guard against ; but it has no applicability in the case of a *technical* seizure, unattended by change of possession or increased risk.

" We conclude therefore that the phrase ' levied on,' as employed in the policy, does not mean a technical levy, unaccompanied by actual seizure and change of possession, and has no application, ordinarily, to proceedings by suit of levari facias for the sale of real estate.

" In The Commonwealth Insurance Co. *v.* Berger *et al.*, 6 Wright 285, a condition precisely the same as that before us was construed by the Supreme Court. In that case, after the policy was issued and before the fire occurred, an execution was placed in the hands of the sheriff, and a levy was made on the goods of the insured, but they were not taken into the custody of the officers, or left in charge of a watchman, nor was the actual possession of the insured disturbed. While this condition of affairs existed the goods were destroyed by fire, and the insurance company defended against payment of the loss on the ground that the insurance ceased when the levy was made. The court held that the levy did not terminate the risk and that the company was liable.

" The principles of this case rule the one before us ; the fact that the levy was on personal property cannot change the principle of construction. If there is any difference, the reason would be still stronger in the case of a levy on real estate, which is always a mere technical seizure without any interference with the possession —at least until after sale.

" The plaintiffs are therefore entitled to judgment. "

[Insurance Co. *v.* O'Maley *et ux.*]

The defendant took this writ, and assigned for error the entry of judgment for the plaintiffs on the question of law reserved.

*William L. Chalfant*, for plaintiff in error.—A condition, expressed as such in a fire policy, if not complied with defeats the insurance, whether it is material to the risk or not, and whether the non-compliance be with or without the act or privity of the assured: 1 Phillips on Insurance, p. 478, sect. 866; Pennsylvania Insurance Co. *v.* Gottsman's Adm'rs, 12 Wright 151; Glendale Woollen Co. *v.* Protection Insurance Co., 21 Conn. 19; Glens *v.* Lewis, 20 Eng. Law & Eq. Rep. 364.

The law of the relation between insurers and the assured is the policy of insurance, with all its clauses, conditions and stipulations, by which their mutual rights and liabilities are to be defined and measured: West Branch Insurance Co. *v.* Helfinstein, 4 Wright 296; Trask *v.* State Fire and Marine Insurance Co., 5 Casey 198.

This condition was in the nature of a covenant on the part of the assured, that if the insured property should be taken in execution "*under any proceedings in law or equity*." the insurance should cease and the company should have an opportunity to rescind the policy upon repayment of a proportionate part of the premium. After the policy was issued a mechanic's lien was filed against the insured property, a judgment was obtained on a scire facias issued on said lien and the property seized in execution by the sheriff by virtue of a writ of levari facias. Was it not the duty of the assured, in good faith to the insurance company, to acquaint them of these facts, in order that they might charge the assured a higher rate of premium for the increased risk or cancel their policy? If property is unencumbered when insured, and afterwards becomes encumbered, the policy assumes that the risk is increased, and hence the necessity for an increase of premium: Pennsylvania Insurance Co. *v.* Gottsman's Adm'rs, 12 Wright 151. The insurer should know whether any liens have attached that would diminish the owner's interest in the property, for it is a fair presumption that the insured did not take the same care of her property when she was about to be dispossessed by the sheriff's vendee as she did before that event, a principle recognised in Brown *et al. v.* Commonwealth Insurance Co., 5 Wright 187.

*W. H. Sutton & Son*, for defendants in error.—This court has adopted as a rule of construction that "if an exception in a policy be capable of two interpretations, equally reasonable, that must be adopted which is most favorable to the assured, for the language is that of the insurers:" The Western Ins. Co. *v.* Cropper *et al.*, 8 Casey 351. And applied this rule of construction to the identical condition in question: The Commonwealth Ins. Co. *v.* Berger, 6 Wright 285.

[Insurance Co. *v.* O'Maley *et ux.*]

The judgment of the Supreme Court was entered October 16th 1876,

PER CURIAM.—The judgment of the court below is sufficiently sustained in the opinion of Judge Sterrett.

Judgment affirmed.